# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORRENE SWARS, as next friend of T.A.S.S., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-13-123-RAW-SPS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Lorrene Swars requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her son T.A.S.S. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that T.A.S.S. was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability for persons under the age of 18 according to the Social Security Act is defined as a medically determinable physical or mental impairment that causes marked and severe functional limitations that can be expected to cause death or that have lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process

to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and "the substantiality of the evidence must take into account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires claimant establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant establish he has a severe impairment or combination of impairments. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

## Background and Procedural History

T.A.S.S. was born on August 19, 1998, and was thirteen years old at the time of the administrative hearing (Tr. 25, 95). The claimant alleges T.A.S.S. was disabled as of December 1, 2001, due to attention deficit hyperactivity disorder (ADHD), and he was previously awarded Supplemental Security Income benefits that were discontinued on October 1, 2009, due to medical improvement. The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*) on July 19, 2010, which was denied. After a hearing on September 27, 2011, ALJ Osly F. Deramus found T.A.S.S. was not disabled in a decision dated January 13, 2012. The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He determined T.A.S.S. had the medically determinable impairment of ADHD, but that it was not a severe impairment (Tr. 13). The ALJ concluded that T.A.S.S. was therefore not disabled (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to find that his ADHD was a severe impairment and (ii) by failing to fully develop the record. The undersigned Magistrate Judge is not persuaded by the claimant's arguments.

On September 21, 2009 (prior to the application date), Kathleen Kralik, Ph.D., completed a mental status and adaptive functioning disability assessment of T.A.S.S. She

observed that the claimant was "enthusiastic, cheerful, pleasant and cooperative," but that he tended "to manifest attention-seeking, dramatic behavioral patterns" (Tr. 199). Noting that he was often unresponsive to social cues and needed repeated redirection to his seat, she commented that this was not oppositional or manipulative, and that he was "quite eager to please; but unable to consistently contain the motor restlessness, to a great extent" (Tr. 199). In fact, she noted that he appeared to function more like an ADHD child *without* medication (Tr. 200). She provided a differential diagnosis of ADHD, combined, severe, and "as yet nowhere near optimally managed via psychotherapeutic and psychotropic treatment," as well as adjustment disorder not otherwise specified. She estimated his current global assessment of functioning (GAF) score was 45-55 (Tr. 202). Continuing, claimant's levels of functioning for occupational purposes were estimated as follows: (i) for personal responsibility, moderately impaired; (ii) for social, significantly impaired; (iii) for communication, somewhat impaired; (iv) for attention, concentration, persistence, and pace, moderately impaired; (v) for cognition, mildly to moderately impaired; (vi) for coping, adequate; (vii) for financial, unable to manage funds because he is a minor (Tr. 203-204). In her prognosis, she stated, "[b]ased on claimant's mental status, it would appear educational/occupational functioning would be quite a challenge to this child relative to the inadequately treated ADHD symptoms evident here," but in light of "both his psychotropic regimen—and the lack of even a minimal trial of psychotherapeutic/behavioral management and parenting interventions," she felt it would be a "disservice" to call him disabled (Tr. 204).

School records from September 2010 through February 2011 indicate five incidents in which T.A.S.S. was placed in in-school suspension and one where he was placed in detention for infractions including class disruption, talking, and disorderly conduct (Tr. 175). His sixth grade math/science teacher completed a questionnaire after knowing him two weeks, indicating that he had slight problems changing from one activity to another without being disruptive and working without distracting himself or others, as well as seeking attention appropriately and following rules (Tr. 107-108). On April 4, 2010, the claimant's principal completed a teacher questionnaire, indicating the claimant's level of functioning *without his medication*. She indicated the claimant had an obvious or serious problem in all ten areas of acquiring and using information, and noted that he would wander around a lot, frequently stopped listening to his teacher after short periods of time, and talked a lot (Tr. 117). Furthermore, she indicated that he had daily problems (checked as "serious" or "very serious") attending and completing tasks, that he was very solitary, had few friends, and preferred solitude or computers (Tr. 118). She also indicated he had daily problems interacting and relating with others, resulting in time outs and preferential seating (Tr. 119). Finally, she indicated that he has daily problems caring for himself, including with regard to handling frustration appropriately, being patient when necessary, using good judgment, and knowing when to ask for help (Tr. 121). She was unaware of the specifics of his medications, but commented that his medications affected his functioning to some degree, and that without his medications he was "a disaster" (Tr. 122). Seven months later, his seventh grade English teacher filled out a questionnaire indicating that he had no problems and she was unaware if he was on

any medication. She had known him eleven weeks, seeing him for forty-five minutes a day during the school week (Tr. 155-162).

T.A.S.S. was assessed on January 4, 2011, at Perspectives Behavioral Health Management by a licensed professional counselor who found he had a global assessment of functioning (GAF) score of 50, with a range of 40-52 in the past year (Tr. 270). The examiner noted the claimant had been diagnosed with ADHD in his childhood, that it was significant in his past and was also present at the time of the exam, and that the following attention/hyperactivity problems were present: inattentive and makes careless mistakes, difficulty sustaining attention, often does not seem to listen when spoken to directly, fails to understand and follow instructions and finish things, difficulty organizing tasks and activities, avoids/dislikes tasks requiring concentration and focus, often loses things needed for task, often distracted by extraneous stimuli, often forgetful in daily activities, fidgets with hands or feet or squirms in seat, runs around a lot or feels very restless, often has difficulty playing or engaging in leisure activities quietly, often talks incessantly, often has difficulty waiting his turn, often interrupts or intrudes on others (Tr. 257).

On November 15, 2011, Denise LeGrand, Psy.D., completed a second mental status exam and intellectual assessment. During the exam, she noted that he did not remain seated during verbal portions, explaining that it did not appear to be oppositional, but that "he just seemed to be able to think and respond better if he was up and moving around" (Tr. 293). She found that his "demeanor and interactions were just outside of normal parameters in ways difficult to define," noting that he possessed some traits found in the autism spectrum but did not appear to be in the spectrum, and that he performed

better when moving around but did not have significant attention problems. Ultimately, she found Dr. Kralik's report still applicable and that it was accurate (Tr. 293). In his IQ assessment, she found he had a full scale IQ score of 88, with verbal comprehension index score of 100, perceptual reasoning index of 75, working memory index of 91, and processing speed index of 94 (Tr. 293). She assessed him with parent-child relational problems and ADHD by history, but stated that such a diagnosis was not supported by her exam (Tr. 294). She noted that T.A.S.S. is "somewhat unusual, but if his strengths could be capitalized on, and he was in a learning environment that would accommodate his need to move around and interact in a verbal 'conversational' exchange rather than a strict pen and paper question format, he would most likely perform at a level more consistent with his abilities and closer to his age level" (Tr. 294).

The claimant first argues that the ALJ erred at step two of the sequential analysis by failing to find his ADHD to be a severe impairment. A claimant has the burden of proof at step two to show that he has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimus* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made

only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In this regard, the ALJ found that the claimant's medically determinable impairment did not significantly limit his ability to perform basic work-related activities. The ALJ carefully reviewed all the evidence and found that the claimant's medically determinable impairment of ADHD was well-controlled with the proper dosage of medication (Tr. 16.). He carefully recounted the opinions of Dr. Kralik and Dr. LeGrand, as well as the reports from his teachers who noted marked differences in his ability to behave when off his medication in comparison to when on it. Additionally, he noted that state reviewing physicians had also found his ADHD well-controlled with medication in the proper dosage (Tr. 16, 216-221, 273). *Moua v. Colvin*, 541 Fed. Appx. 794, 800 (10th Cir. 2013) ("On the contrary, an impairment is not disabling when medications adequately control it without significant side effects)*, citing Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987)

The claimant also argues that the ALJ failed to fully develop the record by failing to obtain an RFC opinion from his treating physicians or ordering further consultative examinations to explain his low GAF scores. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that []he is disabled under the regulations." *Id.* at 361 [citations omitted]. The ALJ is not required to recontact a physician when the evidence received "is consistent and there is sufficient evidence . . . to determine whether [a claimant] is disabled." 20 C.F.R. § 404.1520b(a). Furthermore, the ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* [citation omitted]. Here, there was no indication that further evaluation was necessary to resolve questions related to the claimant's ADHD. Moreover, the claimant's representative did not request that the ALJ order a consultative psychological consultation, and given the assessment performed at Perspectives, as well as by Dr. Kralik and Dr. LeGrand, there is nothing in the record establishing a need for such a consultation. *Hawkins*, 113 F.3d at 1168 (noting that without a request by

counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record).

Because substantial evidence supports the ALJ's decision as outlined above, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be AFFIRMED.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**